CRAWLEY *v.* NEAL.

Opinion delivered February 6, 1922.

1.  PROCESS—CONCLUSIVENESS OF OFFICER'S RETURN.—The recital of
    the return of an officer showing service of summons on defendant's
    wife, she being a member of the family at his usual place of abode
    and over the age of fifteen years, and the recital to the same effect
    in the decree, were merely *prima facie* evidence, and placed the
    burden upon the defendant to show to the contrary, in a direct
    action by him to vacate the decree.

2.  WITNESSES—HUSBAND AND WIFE.—Where an officer made return
    of service of summons on defendant's wife at his usual place of
    abode, she being a member of his family over the age of fifteen
    years, the statute (Crawford & Moses' Dig., § 1144) makes her
    an agent of her husband for the purpose of such service, and in
    such capacity she may, under *Id.,* § 1446, testify that no such
    service was ever had upon her.

3.  JUDGMENT—VACATING FOR WANT OF SERVICE OF PROCESS.—In a suit
    to vacate a foreclosure decree obtained by a building and loan as-
    sociation against a member-borrower where the officer's return of
    service recited service on the member's wife, the officer testified
    that the return was correct, but that he had no recollection of
    having made it; the member's wife offered to testify that no such
    service was had on her, but the testimony was excluded; after
    the service was alleged to have been made the association treated
    the member as in good standing by accepting dues.   *Held* that
    the testimony was sufficient to show that there was no service.

4.  BUILDING AND LOAN ASSOCIATION—ESTOPPEL.—Where a member
    of a building and loan association was in default in his payments
    as a stockholder and borrower, the association had a right to treat
    him as in default and to institute foreclosure proceedings against
    him; but it could not do this and at the same time treat him
    as a stockholder in good standing by accepting payment of dues
    and interest on his loan and fines for defaults, and by giving him
    credit for dividends earned on his stock.

5.  JUDGMENT—VACATION—MERITORIOUS DEFENSE.—Where a building
    and loan association procured a decree of foreclosure of a mort-

gage given by a member, and the latter, in an action by a purchaser under the foreclosure decree, filed a cross-bill, seeking to vacate the decree, alleging that the association was estopped to rely upon such decree because, after the suit was brought, it accepted dues from him as a member, and the evidence tended to sustain such allegation, a meritorious defense against the foreclosure decree was alleged and proved.

6. JUDGMENT—FRAUD IN PROCUREMENT.—Where a building and loan association, after instituting a proceeding to foreclose a mortgage given by a member, accepted payment of dues, thereby treating the member as in good standing, its conduct in subsequently taking a decree of foreclosure and procuring the member's property to be sold, constituted "a fraud practiced by the successful party in obtaining the judgment or order" within the fourth subdivision of Crawford & Moses' Dig., § 6290.

7. JUDICIAL SALE—NOTICE.—A party purchasing at its own foreclosure sale takes with notice of all the defects in the decree.

8. VENDOR AND PURCHASER—NOTICE.—One who purchases land in another's possession takes with notice of the latter's rights and equities.

Appeal from Sebastian Chancery Court, Ft. Smith District; *J. V. Bourland,* Chancellor; reversed.

*Hill & Fitzhugh,* for appellant.

1. The return of the officer in an action to vacate a judgment, as also a recital in the record of due service, is only *prima facie* evidence of service, and may be overcome by proof, the burden resting on the plaintiff in the action to vacate. 32 Cyc. 514; 102 Ark. 252; 63 *Id.* 513; *Id.* 323; 72 *Id.* 265; 138 *Id.* 403. Appellant has met this burden. The wife was competent to testify touching the question of substituted service upon her for her husband. C. & M. Dig., § 4146; 32 Cyc. 461, 462; 39 Ark. 182.

2. A valid defense is shown: (1) The evidence sustains the fact that an excessive judgment was rendered. The computation of the amount due was not in accord with the rule perscribed by this court in foreclosures of building and loan mortgages. 62 Ark. 572; 125 *Id.* 192. (2) Crawley has proved a good defense in that the conduct of the association amounted to a waiver of his delinquency. 21 Corpus Juris. 1115; 87 Ark. 393.

o

(3)   The association and its grantors are estopped by the conduct of the association in treating Crawley as a stockholder, after the institution of the suit and before taking judgment, accepting dues, crediting him with dividends, collecting fines and interest, and after it had obtained title under the decree in collecting dues from him and knowingly permitting him to pay taxes and assessments and make lasting and valuable improvements, without disclosing to him that it claimed title to the property. 69 Ark. 211.   At all times since 1903 Crawley was in open, notorious and adverse possession of the property.   The grantees of the association took with full knowledge of infirmities existing in its title, and Crawley's adverse possession put them on notice of his equities.   34 Ark. 391; 76 *Id.* 25; 82 *Id.* 455; 94 *Id.* 141.

4.   Since Crawley was a *bona fide* occupant of the property under the claim of ownership, it was error to deny him a recovery for the value of improvements placed on the property after the association acquired title.   19 Corpus Juris, 1247.

*Geo. F. Youmans,* and *Warner, Hardin & Warner,* for appellee.

1.   The answer and cross-complaint were only a collateral attack upon the foreclosure decree, and demurrable 23 Cyc. 1063-4; 118 Ark. 449; 123 *Id.* 211; 92 *Id.* 611; 50 *Id.* 188; 136 *Id.* 289; 113 *Id.* 449; 104 *Id.* 187; 20 Pac. 82; L. R. A. 1918-D, pp. 470-476, notations at pp. 474 and 475.

2.   Crawley's wife was not a competent witness in his behalf.   The substituted service provided for in § 1144, C. & M. Digest, cannot be explained on the theory of agency.   Its explanation rests in the community of feeling and interests by which the members of a family are bound together.   The fact alone that the statute imposes no duty upon the member of the family to whom the copy of the summons may be delivered, negatives the idea of agency.

3. No meritorious defense is shown. It is not possible to determine from the record that the judgment was excessive, or that the rule for computing the amount due as prescribed in 62 Ark. 572, and 125 Ark. 192, was not complied with; and the mere allegation in the cross-complaint that the judgment was excessive, is not sufficient. 50 Ark. 458. A valid defense must not only be alleged but proved. *Id.;* 102 Ark. 252; 54 *Id.* 451; 83 *Id.* 21; 94 *Id.* 347; 104 *Id.* 449.

4. The question of waiver is raised here for the first time. It was not raised below in the pleadings or by the proof. 142 Ark. 47; 46 *Id.* 96; 53 *Id.* 213; 74 *Id.* 72; 76 *Id.* 509. Waiver, if a defense at all, does not touch the merits of the case. Crawley's indebtedness to the association is not disputed, but is admitted. A waiver of his defaults could only accomplish a delay in the proceedings for a short time. As a defense it is purely technical and affords no ground for vacating the decree. 96 Ark. 520.

5. The association is not estopped from relying upon the judgment in the foreclosure suit. Crawley was not misled by the association. 111 Ark. 205. In the payment of taxes and for improvements, he was not induced thereto by any act of the association, but was a mere volunteer. 102 Ark. 159.

6. Crawley was not entitled to receive credit for improvements. 51 Ark. 46.

WOOD, J. On April 30, 1906, A. C. Crawley, a negro, residing at Fort Smith, Arkansas, borrowed $225 from the People's Building & Loan Association of Fort Smith, and to secure the loan executed to the association a mortgage of even date on lot 2, block 58, in the city of Fort Smith. His wife, Annie, joined him in the mortgage, relinquishing her rights of dower and homestead. On October 18, 1909, Crawley borrowed from the association an additional sum of $750 and executed a second mortgage on the same lot to secure that loan, in which his wife

joined, relinquishing dower and homestead. Crawley also executed bonds to the association of even dates with the mortgages in which he bound himself to pay all dues upon his shares of stock in the association which might be assessed against him under the constitution and by-laws. He bound himself to pay these dues on the second and fourth Tuesday of each month and to pay all fines assessed against him under the constitution and by-laws of the association for falure to promptly pay the dues. Upon making the second loan the two loans were by consent of the parties consolidated and carried as one loan. While the mortgages and bonds specified that the loans were to be paid semi-monthly, they were in fact paid monthly. The total dues on both loans amounted to the sum of $13.85 as monthly payments.

Crawley was not in default in making payments of his dues on the first loan. His first default occurred October 25, 1909, when he failed to pay the full amount of his monthly dues, and from July 31, 1910, while he made regular monthly payments, many of these payments were for the amounts less than the full amount due. During all of this time that he was in default, fines were being entered against him on the books of the association. On May 2, 1913, the association filed its complaint in the Sebastian Chancery Court against Crawley and his wife to foreclose the mortgages executed by them to the association, and on that day summons was issued for Crawley and wife and placed in the hands of the sheriff, and the same was returned and filed with the clerk of the chancery court May 12, 1913. The return was made by the deputy sheriff, who specified therein that on May 6, 1913, he served Annie Crawley by delivering a copy of the summons to her, and that he served "A. C. Crawley by delivering a copy of the same to Annie Crawley, his wife, she being a member of the family, at his usual place of abode, and over the age of sixteen years." On October 14, 1914, the cause was called for hearing, and Crawley and his wife did not ap-

pear, and a decree *pro confesso* was entered against them in favor of the association in the sum of $1,041.07 together with interest thereon at the rate of 6 per cent. per annum from October 14, 1914, and the mortgages were foreclosed. The special commissioner appointed for the purpose was directed to sell the property unless the amount of the decree was paid within thirty days. The decree was not satisfied by Crawley, and on the 10th of April, 1916, the property was sold by the commissioner at public sale and was bid in by the Association for the sum of $1,100. The sale was reported by the commissioner to the chancery court and the report of sale was confirmed, and the deed to the association was duly approved by that court on the 12th of April, 1916.

On April 6, 1920, the association for the consideration of $1,100 sold and conveyed the property to Caroline Davidson, and on the 14th of April, 1920, Caroline Davidson for the consideration of $1,500 sold and conveyed the property to Pelly Neal.

During all the time covered by the above transactions Crawley remained in possession of the property, and he refused to deliver the same to Pelly Neal. On the 3rd of February, 1921, Pelly Neal instituted an action in the circuit court of Sebastian County against A. C. Crawley for the possession of the property. Neal alleged in his complaint that he was the owner of the property, deraigning his title from the foreclosure sale under the mortgages. Crawley answered and alleged that the association was a necessary party, and asked that it be made a party, which was done. He made his answer a cross-complaint against Neal and the association, and alleged that the decree under which Neal claimed the title was void for want of service upon him in the foreclosure suit. He alleged that no summons was delivered to him or to his wife, and that he knew nothing of the pendency of that suit until the property had been conveyed to Caroline Davidson, who did not assert title to the property until after April 6, 1920. He further al-

leged that,if he or his wife were served with summons,the association was estopped from relying upon the decree, for the reason that it thereafter accepted dues from him on the mortgages, which it was seeking to foreclose, and without notifying him that it intended to foreclose. He alleged that there was no sum due on the $225 mortage, that sum having been fully paid by the payment of dues prior to the rendition of the decree. He alleged that at the time of the rendition of the decree and the execution of the deeds from the association to Davidson and from Davidson to Neal he was in possession of the property, and for many years prior thereto had been in the open, notorious, and adverse possession, claiming it as his own and exercising ownership over it; that Davidson and Neal obtained their deeds with full knowledge of these facts. He alleged that, by the conduct of the association as above set out in permitting him to remain in the possession of the property after the alleged foreclosure, in permitting him to continue to make his payments of dues on the mortgages under the terms of the constitution and by-laws of the association, in accepting these payments as such, and in permitting him to continue as the owner by paying taxes and improvement assessments on the property, and also in making valuable improvements thereon, the association was estopped from claiming title to the property under the foreclosure decree. He admitted that there was a balance due the association on the mortgages, but alleged that same could not be ascertained without an account. His prayer was in the alternative. He prayed that the foreclosure decree of October 14, 1914, be declared null and void, a cloud upon his title, and that the cause be transferred to equity and the deeds from the association to Davidson and from Davidson to Neal be canceled. He further prayed that, if the foreclosure decree were held to be valid, he have judgment against the association for taxes and for improvement assessments and for the value of the improvements placed upon the property as

well as all payments he had made as dues to the association since the rendition of the alleged judgment of foreclosure.

The cause was transferred to equity, and Neal answered the cross-complaint, admitting that Crawley was in possession at the time Neal purchased from Davidson, but alleged that he (Neal) was advised that Crawley was in possession as tenant paying rent for the property. He alleged that he paid a full and valid consideration for the property. Other allegations of the cross-complaint were denied by him.

The association answered the cross-complaint, denying its allegations as to the payment of taxes and improvement assessments. It alleged that service was duly had upon Crawley and his wife in the foreclosure proceedings, and that such decree was valid. It denied the facts alleged as an estoppel against the association. It alleged that Crawley occupied the property from the time of the foreclosure suit until the date of the decree without paying rent; that after the suit was instituted Crawley made promises to pay up his dues, and the association, relying on these promises, did not press the suit to an immediate conclusion, but permitted it to remain in court and received small payments at intervals, but that the delinquent dues were not paid; that, after waiting until October 14, 1914, the association took a decree directing the sale of the property; that after the decree was rendered the association postponed the sale of the property and permitted Crawley to remain in possession thereof under his promises to pay off the judgment and under his agreement that he in the meantime would pay a fair rental value for the use of the property; that he did at various times pay small sums for the use and possession of the property, which sums were not equal to the reasonable rental value and were not made upon the mortgages, but were received and accepted by the association as rent. It alleged that since the decree Crawley had paid the sum of $200 as rent, but that

a fair rental value exceeded that sum in the sum of $880, for which it prayed judgment against him and also prayed that his cross-complaint be dismissed. The testimony at the trial was taken *ore tenus,* and is brought into the record by a bill of exceptions.

1. The first question presented for our consideration in the briefs of counsel is whether or not there was valid service upon Crawley and his wife in the suit by the association against them to foreclose the mortgages. On this issue Cooper testified that he was deputy sheriff and wrote the return on the summons and signed it. He stated that he did not recall the facts and circumstances in connection with the service of the summons. He would not be positive that he knew Annie Crawley, but he had known A. C. Crawley some ten or fifteen years —knew him at the time he served the summons. He had no recollection of the facts relating to the service of the summons, and his testimony concerning the service of it is based entirely upon the fact that he had made the return. The notation in pencil of the street address of Crawley was placed on the summons before it was served. He probably got it from the directory or probably from the attorney for the appellee. Witness saw Annie Crawley on the morning he testified, but was not positive that she was the woman upon whom he served the summons. The facts stated in the return are true. He would not have made the return if he had not served the summons as stated therein. Witness could not now recall how he did it, but satisfied himself in his own mind that he was making a true return, and the facts stated in the return are true, provided Annie Crawley did not misrepresent herself as being the right party. Witness had no personal recollection of serving the summons.

The appellant offered to prove by the witness Annie Crawley that she was the wife of A. C. Crawley at the time the summons is alleged to have been served upon her; that there was no summons upon her personally nor upon her for her husband in the original

foreclosure suit, and that the return of the officer to that effect was not true. The court held that such testimony was incompetent. Crawley testified that he was not served with summons in the case, and never knew that such a suit was pending; that the deputy sheriff Cooper did not know him, and he did not know Cooper. The return shows that the service was had on the 6th day of May, 1913, but judgment was not rendered until October 14, 1914, over seventeen months after the alleged service. Two terms of the chancery court had intervened— one in October, 1913, and the other in April, 1914. After the alleged service of summons the association accepted building and loan dues or payments in full for the months of May, June and September, 1913, and April, 1914, and also accepted partial payments for other months. They charged appellant under these rules with fines for default in payments. At least two of these fines in the sum of $1.95 each were accepted. They also accepted, under their building and loan plan, interest on appellant's loan in two different payments of $47.97 each, and on June 30, 1913, under their rule for computing credit balances, they gave him a credit for $46.37, and credit for a dividend in the sum of $2.15. The first of the year 1914 they brought forward a stock credit on dues in the sum of $38.20 and a credit of $1.90 on dividends, and they accepted a payment of $10.00 on his dues in August, 1914, after the alleged service and before taking judgment in the sum of $1,041.07 on the original complaint and the alleged service had thereon.

The court has reached the conclusion that the testimony of Annie Crawley was competent and should have been admitted to prove that there was no service. When admitted and considered in connection with the testimony as to the conduct of the association toward Crawley after the alleged service, a majority of us are of the opinion that it was sufficient to show that there was no service. The recital of the return of the officer showing service and the recitals in the decree were merely *prima*

*facie* and placed the burden upon the appellee to show to the contrary, in a direct action by him to vacate the decree. *Holman* v. *Lowrance,* 102 Ark. 252; *White* v. *Smith,* 63 Ark. 513; *Hunter* v. *Euper,* 63 Ark. 323; *Love* v. *Kaufman,* 72 Ark. 265; *Little Rock Chamber of Commerce* v. *Reliable Furn. Co.,* 138 Ark. 403. The return of the officer was never more than *prima facie* evidence of service in this case, because the officer who made the return testified in substance that, while the return was true, he had no personal recollection of having made the service except the fact that he indorsed the return on the summons.

Treating the testimony of Annie Crawley as competent, it shows that she was not served personally, nor was service had upon her for her husband. The testimony of Crawley shows that he was not notified of the pendency of the suit to foreclose. The conduct of the association toward Crawley after the alleged service and before the decree was rendered tends to corroborate the testimony on behalf of appellant that no service was had. The conduct of the association at least shows that it was dealing with the appellant as if it had not instituted any foreclosure proceedings against him. Assuming that the testimony of Annie Crawley is competent, the appellant has fully met the burden cast upon him and has proved by a preponderance of the evidence that there was no service.

The testimony of Annie Crawley was competent for the following reasons: The statute renders incompetent the testimony of husband and wife for or against each other or concerning any communications made by one to the other during marriage, but provides that either may testify for the other in regard to any business transactions by one for the other in the capacity of agent (§ 1446, C. & M.). Section 1144, Crawford & Moses' Digest, provides for a substituted service on a defendant in an action by leaving a copy of such summons at the usual place of abode of the defendant with some person who is a member

of his family over the age of fifteen years. Construing these two sections of the statute, we are convinced that the lawmakers intended by the latter statute to constitute the member of the family of the defendant over the age of fifteen years with whom the summons is left an agent for such defendant. Since a lawsuit generally is a matter of serious concern to the litigants engaged therein, the purpose of the lawmakers in allowing substituted service was to constitute the member of the defendant's family over the age designated as his agent in the service of summons. As was said in *Duvall* v. *Johnson*, 39 Ark. 182: "The statute wisely supposes that the member of his family may be relied upon in ordinary cases to advise him in a matter seriously affecting his interest and the welfare of all." The meaning of these statutes is that when the service of summons for the husband is left with a wife over fifteen years of age she must be deemed his agent for the transaction of the business of obtaining service upon him and as competent to testify concerning that matter. The only way that substituted service could be had upon a defendant is to constitute one his agent for that purpose, which the statute (§ 1144) does by necessary implication.

But, even if the trial court were correct in holding that there had been a valid service upon the appellant in the foreclosure proceedings, we are convinced that the conduct of the association toward the appellant after alleged service was tantamount to an abandonment of such foreclosure proceedings and a waiver of its right to take judgment *pro confesso* upon the original complaint and summons. At the time the alleged foreclosure action was instituted, appellant was in default in his payments as a stockholder and borrower in the association, and the association therefore had the right to treat him as in default and to institute foreclosure proceedings against him, but it could not do this and at the same time treat him as a stockholder in good standing in the association. The positions are wholly antagonistic.

To pursue one course is a necessary abandonment of the other. Here the undisputed evidence shows that, after the alleged institution of the action to foreclose the mortgages, the association continued to treat the appellant, at least up to the time of the taking of the decree, as a stockholder and borrower having all the rights as such under the rules of the association. Having accepted his payment of dues, although not paid promptly and for the full amount, to the time of the decree, and having accepted his interest on the loan and fines for his defaults and given him credit for the dividends earned on his stock, certainly by this conduct it was treating him as a stockholder in good standing. The association by this conduct led the appellant to so believe, and he acted upon such belief in making his payments. Therefore, the association must be held to have waived any default or forfeiture of any of the rights of appellant and is estopped from proceeding to judgment under the original complaint and summons.

The association, under the undisputed facts of the record, was in no attitude to take a judgment as on the original complaint and summons. It should at least have amended its complaint and brought the appellant's default and the amounts due the association down to date and given the appellant new notice of its intention to proceed to foreclose the mortgages. In other words, the association should have done this or else have brought a new suit against the appellant based upon the conditions as they then existed and given the appellant an opportunity to defend that suit if he was so advised and in default thereof to have taken its decree of foreclosure, computing the amount due it under the rules and plans of the association, according to the law announced in *Roberts* v. *American Building & Loan Assn.,* 62 Ark. 562, and which is repeated with the modification indicated in *Abrams* v. *Citizens' Bldg. & Loan Assn.,* 125 Ark. 192. A majority of the court has reached the conclusion that the appellant is entitled to have the decree

in favor of the association against him rendered October 14, 1914, vacated and set aside, provided he had a meritorious defense to that suit.

2. Among other defenses the appellant alleged in his answer and cross-complaint that "the association was estopped from relying upon the decree herein in that, after suit was brought and after said purported summons upon him and his wife, the association accepted dues from him on the mortgages which it was seeking to foreclose." This pleading could have been more aptly phrased, but the facts are sufficiently set forth, and they are tantamount to an allegation that the association by its conduct had waived any default of the appellant by accepting dues from him after the alleged foreclosure proceeding was instituted, and that by so doing it had estopped itself from proceeding to judgment in that action. There is an allegation in appellant's answer and cross-complaint to the effect that the association after obtaining its judgment did not attempt to exercise its purported rights thereunder until the 10th of April, 1916; that from the second of May, 1913, until the 10th of April, 1916, when the assocation caused the property to be sold, the appellant was in possession of the property, paying his dues to the association and fulfilling the terms of his mortgages, paying taxes and improvement district assessments upon the property; that after the property had been deeded to the assocation by the commissioner, the appellant remained in possession and still continued to pay his dues to the association and the State and county taxes and improvement assessments upon the property and also placed improvements thereon; that the association by this conduct had estopped itself from claiming title to the property. It would unduly extend this opinion to set forth all the facts which were in evidence tending to support these allegations. It suffices to say the facts we have already set forth and other facts that were in evidence tended to sustain these allegations of appellant's answer and cross-

complaint. The appellant, in our opinion, has alleged and proved that he had a meritorious defense to the decree which he asked to have set aside. He has met every requirement of the law in this respect. See *Holman* v. *Lowrance, supra; Chambliss* v. *Reppy,* 54 Ark. 541; *Knights of Maccabees* v. *Gordon,* 83 Ark. 21; *Simpson Co.* v. *Moore,* 94 Ark. 347; *Quigley* v. *Hammond,* 104 Ark. 449.

In *Knights of Maccabees* v. *Gordon, supra,* it is said: "But, as the truth of the defenses are not finally tried in the proceedings to vacate the judgment, enough evidence to make a *prima facie* showing of the truth or existence of the defenses would be sufficient to authorize the court to vacate the judgment." Under this rule the appellant has certainly alleged and proved a meritorious defense.

3. The allegations of the answer and cross-complaint were sufficient to justify the trial court in setting aside this judgment, either under the provisions of § 6238, C. & M. Digest, on the ground that the judgment was obtained without notice, or, if we are mistaken in holding that there was no service, then the allegations of the answer and cross-complaint were sufficient to bring the appellant's cause of action against the association under subdivision fourth of § 6290 of C. & M. Digest. For the obtaining of the judgment under the circumstances disclosed in the evidence, although not so intended, was nevertheless in law a fraud practiced upon the court. It is obvious that the main purpose of the cross-complaint of the appellant against the assocation was to vacate the decree of October 14, 1914. The allegations were sufficient to constitute a cause of action as a direct attack upon that decree under the above provisions of the statutes.

The appellee, Neal, in his complaint sets up the foreclosure decree and the purchase of the association under that decree and the sale of the property by the association to Caroline Davidson and his purchase from Caro-

line Davidson. In his answer to the cross-complaint of the appellant he admits that appellant was in possession of the property at the time of his purchase from Caroline Davidson, but alleges that he was advised that appellant was at that time in possession as tenant paying rent therefor. He alleges that Caroline Davidson paid a full and valid consideration for the property, and that he in turn paid a valid consideration for the same. Taking all of these allegations together, they are hardly sufficient to set up that the appellee, Neal, was claiming to be an innocent purchaser of the property. Indeed, if such were the effect of the allegations, the proof was not sufficient to show that he was an innocent purchaser. The appellee association purchased at its own foreclosure sale, and, of course, had notice of all the defects in its decree; and, as we have seen, acquired no rights under that decree. The appellant had been in the open, notorious and adverse possession of the property since 1903. A purchaser from the association, with appellant in possession and holding adversely against all the world, acquired no greater title than the association acquired. Neal admitted that he had notice of the appellant's possession, and nowhere in the testimony is his allegation established that he was informed at the time of his purchase that appellant was the tenant of either the association or Caroline Davidson. It cannot be held under the allegations and proof in this case that either Davidson or Neal were innocent purchasers. The association was a purchaser with knowledge that it was purchasing under a void decree. Neither Davidson, nor Neal, was in any better attitude than the association. The association is, therefore, estopped from claiming any benefits under the decree, and the vendees of the association are likewise estopped. See *Sisk* v. *Almon*, 34 Ark. 391; *Thalheimer* v. *Lockert*, 76 Ark. 25; *Sproull* v. *Miles*, 82 Ark. 455; *Allen* v. *Daniel*, 94 Ark. 141.

The decree is therefore reversed, and the cause is remanded with directions to vacate and set aside the de-

cree of October 14, 1914, and to cancel the deed executed thereunder of the commissioner to the association. Inasmuch as the appellant and the association are now in court, the chancery court is further directed to allow the parties, if they so desire, to amend, or to file further pleadings, to make Caroline Davidson a party, to take further testimony, and such other and further steps as may be necessary to adjust and settle the rights of all parties, according to the rules of equity and not inconsistent with this opinion.

SMITH, J., concurring.

McCULLOCH, C. J., (dissenting). Annie Crawley did not testify in the trial below, but appellant offered to prove by her that she was not served with process. The court erred in rejecting the offer. The issue as to service ought to be tried over again with the testimony of Annie Crawley admitted. She may or may not testify according to the offer made by counsel, or her testimony may be broken down and discredited on cross-examination.

With the testimony of Annie Crawley excluded, the finding of the chancellor was not against the preponderance of the testimony. On the remand of the case, appellant should be allowed to introduce Annie Crawley as a witness, and appellees then should be allowed to cross-examine her and introduce other witnesses in impeachment or contradiction. We assume, merely for the purpose of testing the correctness of the trial court's ruling, that the witness would testify according to the offer of counsel, but in remanding the cause for further proceedings we should not indulge that assumption, but should merely give an opportunity for appellant to introduce the offered witness. I think the majority are in error in sending this case back and treating the issue of service as settled, because testimony which was offered but not actually introduced appears now to give the preponderance in favor of appellant on that issue.

The trial of the cause on the remand should be confined to the adjustment of the account between appellant and the building and loan association.

The reversal of the decree does not affect the validity of the sale thereunder, and the purchaser should be protected. *Boyd v. Roane*, 49 Ark. 397; *Evans v. Davis*, 146 Ark. 595. It is true that the property was purchased at the sale by the association, but appellee, Neal, a stranger to the proceedings, became the purchaser, from the association and is entitled to the same protection as if he had purchased at the sale by the commissioner under the decree. The possession of Crawley was notice only of such equities as might have arisen after the confirmation, and no such equities are asserted. The decree was conclusive of all equities which might have existed prior thereto. If the decree be vacated, appellant is only entitled to restitution from the association of all funds received in excess of the amount now found to be due under the mortgage.