DAVIS *v.* FERGUSON.

Opinion delivered May 12, 1924.

1. MORTGAGES.—A recital in a foreclosure decree that service of summons was had upon defendants as required by law is *prima facie* evidence of that fact.

2. JUDGMENT—APPLICATION TO SET ASIDE DEFAULT—BURDEN OF PROOF.—In a direct action to set aside a · default foreclosure decree, the burden is on the applicants to prove want of service of summons upon them or fraud in procuring service.

3. JUDGMENT—APPLICATION TO SET ASIDE—EVIDENCE.—In an action to set aside a default foreclosure decree, evidence *held* insufficient to prove want of service, as against recitals of decree showing such service.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor.

*Betts & Betts* and *Saye & Saye,* for appellant.

1. There was no defense to the action brought to foreclose, and there could not have been any meritorious defense thereto, since the debt was a valid and subsisting obligation, and past due. The record discloses that the proper decree was rendered in 1914, and that the same decree would have been entered had all the parties been properly before the court, except that personal judgment should not have been entered against defendants in that case. This error, however, was not prejudicial, as there was no deficiency judgment remaining against the defendants after the sale of the property. 15 R. C. L. § 148; *Id.* 698, § 149; *Id.* 717, § 169.

2. Before the defendants would be entitled to relief against the decree for want of service, they must aver

and prove that, if relief is granted, a different result will be attained from that reached by the decree complained of. 50 Ark. 458; C. & M. Dig. §§ 6292, 6293; 140 Ark. 447; 101 Ark. 142; 157 Ark. 464; 123 Ark. 447; 84 Ark. 527; 136 Ark. 537. The position of the minors in the case is no better than that of the adults. 90 Ark. 44; 133 Ark 97; 49 Ark. 397; 124 Ark 377.

3. The appellees are guilty of such laches as ought to preclude them from relief in this case. 15 R. C. L. 694, § 146; 135 U. S. 304; 37 Ark. 450.

4. All of the appellees, except Tobe and Linzy Junior, who had no defense to the original suit, are barred by the statute of limitations. C. & M. Dig. § 6946; 76 Ark. 146; 72 Ark. 339; 52 Ark. 132; 46 Ark. 25; 47 Ark. 558; 61 Ark. 541; 53 Ark. 400; 56 Ark. 460; 27 Ark. 178; 22 Ark. 483; 77 Ark. 242; 82 Ark. 51; 68 Ark. 449.

*Wilson & Martin,* for appellees.

1. The decree was void. C. & M. Dig. §§ 6238, 6261, 1113, 1114, 1146; 152 Ark. 232.

2. The purported service on the minors was invalid. 49 Ark. 397; 81 Ark. 450-465. The lower court rendered judgment *in personam* against all of the defendants, and they would be entitled to come in and have that judgment set aside. The Fergusons were tenants in common. Such of them as were not parties to the foreclosure suit would have the right to redeem for all the co-tenants. 35 Ark. 67; 31 Ark. 91; 74 Ark 143; 84 Ark. 525; 37 Ark. 643; 100 Am. Dec. 222; 14 Minn. 289; 30 Mo. 439; 50 Am. Dec. 37; 1 Smead 87; 60 Am. Dec. 137; 95 Am. Dec. 767, notes; 21 Am. St. Rep. 248; 19 R. C. L. 647; 35 So. 357; 100 Am. St. Rep. 42; 46 Am. Dec. 595.

3. Plaintiffs are not barred by laches nor by limitation. 8 Wash. 652. A plaintiff in a foreclosure suit is not an innocent purchaser at the sale, when he knows he has not served the defendants with process. 20 Ia. 161; 89 Am. Dec. 520; 27 Ia. 381; 12 Col. 46; 13 Am. St. Rep. 204; 6 How. 163; 4 Dak. 360, and note; 42 Mich. 362; 43 N. J. Eq. 52; 66 Tex. 548; 15 Ill. 33; 45 Kan. 510;

35 Minn. 207; 48 Cal. 592; 16 L. J. Ex. 204; Mechem on Agency, § 810. The rule as to showing a meritorious defense has no application in a case of this kind, where the applicant for relief does not seek to be discharged from the burden of his obligation, but merely asks that his property, which was taken from him without any process of law of which he had notice, be returned to him upon his satisfaction of the lien created by the mortgage. 95 Mich. 581; 35 Am. St. Rep. 586, and note; 12 Col. 46; 75 Am. Dec. 146, note. The five-year statute of limitation applicable to judicial sales cannot apply here. 61 Ark. 329; 31 Ark. 272; 71 Ark. 310; 63 Ark. 1.

HART, J. This was an action in the Union Chancery Court by appellees against appellant to set aside a decree foreclosing a mortgage on their land, and to allow appellees to make defense to said foreclosure suit.

The foreclosure decree was obtained by default, and the complaint alleges that there was no service of summons upon appellees, who were defendants to the action.

Appellant was the plaintiff in the foreclosure suit, and purchased the land at the sale, and, in his answer, alleges that the foreclosure proceedings were regular and that service of summons was had upon appellees.

It appears from the record that Ned Ferguson owned the land in controversy, which comprised 180 acres, situated in Union County, Arkansas. On February 20, 1911, Ned Ferguson executed a mortgage on said land to R. A. Hilton to secure the sum of $250.75, evidenced by a note of the same date as the mortgage, due and payable on the first day of November, 1911, with interest at the rate of ten per cent. per annum from date until paid. Pat McNalley was named as trustee in the mortgage, or deed of trust. Ned Ferguson died intestate on May 29, 1914, without having paid any part of the indebtedness mentioned above, and left surviving him, as his sole heirs-at-law, appellees, who are his children and grandchildren.

On the 22d day of March, 1911, R. A. Hilton sold and transferred the said note and mortgage to B. R. Braswell for value received. On the 11th day of Novem-

ber, 1911, B. R. Braswell sold and transferred said note and mortgage to the plaintiff, B. Davis, for a valuable consideration. On the 7th day of July, 1914, Pat McNalley, as trustee, and B. Davis, as beneficiary, instituted an action in the Union Chancery Court against appellees as the sole heirs-at-law of Ned Ferguson, deceased, to foreclose said mortgage.

The prayer of the complaint was that judgment be rendered in favor of the plaintiffs in the action against the estate of Ned Ferguson, deceased, in the sum of $250.75 principal, with interest thereon at 10 per cent. per annum from February 20, 1911, and that said deed of trust be foreclosed.

A decree of foreclosure was duly entered of record at the September term, 1914, of the Union Chancery Court. The decree recites that the plaintiff filed the original note and deed of trust sued upon, and asked for it to be foreclosed; also proof of publication of warning order for the nonresident defendants, and the report of the attorney *ad litem* for the minor defendants was filed and approved.

The chancellor found that certain of the defendants had been, in due time, summoned by publication of a warning order, and that service of summons had been duly had upon the other defendants to the suit.

The chancellor also found that the sum of $344.18 was due upon said mortgage indebtedness, and, the defendants having made default, a decree of foreclosure was duly entered of record in accordance with the findings of the chancellor.

Pursuant to the decree of foreclosure, there was a sale of the land by a commissioner appointed for that purpose, and B. Davis became the purchaser at the sale for the sum of $410. On the 3rd day of March, 1915, a deed was executed by the commissioner to said B. Davis to said land. The deed was duly approved by an order of the court, and B. Davis took possession of the land on March 3, 1915, and has been in possession of it ever since.

The complaint in the present action to set aside the decree in the foreclosure suit was filed on April 14, 1921. The case came on for final hearing on the depositions introduced in evidence on March 15, 1923, in the Union Chancery Court.

The chancellor found the issues in favor of appellees, who were plaintiffs in the court below, as against appellant, B. Davis, who was the defendant in the court below. The decree further recites that appellees tendered to appellant the amount found due him by the chancellor under the mortgage or deed of trust, and appellant refused to accept the tender. The money was then paid into the registry of the court by appellees. A decree was entered in accordance with the finding of the chancellor, and to reverse that decree appellant prosecutes this appeal.

It appears from the record that the appellees are negroes, and either lived in Union County or in adjoining counties at the time Ned Ferguson died. They all testified upon the trial of the case.

Tim Ferguson was one of the children of Ned Ferguson, deceased, and was a witness for appellees. According to his testimony, he is forty-two years of age, and lives in Calhoun County, Arkansas. His father died in 1914. He never had any notice of the suit foreclosing the mortgage on the land. He was never served with any summons to that suit. On cross-examination he admitted that he knew that B. Davis had been claiming the land for about six years. He doesn't know why he waited six years before taking steps to try to recover the land. He tried to employ Mr. Pat McNalley, and he claimed to be working for them in the matter. In 1916 his brother-in-law, John Smith, told him about the foreclosure suit and about Mr. Davis buying the land in that suit. John Smith employed Mr. McNalley to try to get the land back.

Sterling Bell, a grandson of Ned Ferguson, was a witness for appellees. According to his testimony, he is twenty-seven years old, and his mother, who was a

daughter of Ned Ferguson, died in February, 1913, without making a will. He was her only child. He was never served with summons in the foreclosure suit. His first knowledge of that suit was when the present suit was commenced. On cross-examination, at the request of counsel for appellant, he wrote his name.

In this connection it may be also stated that there was introduced in evidence a paper showing that Sterling Bell had acknowledged service of summons in the mortgage foreclosure suit. Several witnesses testified that the signature to that paper and the signature written by Sterling Bell while he was giving his testimony were not written by the same person.

On the other hand, several other persons testified that the two signatures were written by the same person.

Susan Smith, a daughter of Ned Ferguson, deceased, was also a witness for appellees. She denied signing any acknowledgment of service of summons in the mortgage foreclosure suit. On cross-examination she admitted that she heard about the foreclosure suit being brought.

John Smith, her husband, was also a witness for appellees. According to his testimony, Sterling Bell was at the funeral of his grandfather. The witness went to Mr. McNalley, and spoke to him about the adjustment of the mortgage, after Ned Ferguson had died, and McNalley told him that he would attend to it. McNalley told witness he would notify them before the mortgage was foreclosed, but did not do so.

Andrew Ferguson was also a witness for appellees. He knew that Mr. Davis had a mortgage on the land, and went to see him about paying it off after his father died.

The other children also testified that they knew about the land being mortgaged by their father, and that the mortgage indebtedness was unpaid at the time of his death. They denied having been served with summons in the mortgage foreclosure suit, or that they had acknowledged service of summons in that suit.

According to the testimony of a deputy sheriff, he served the summons on two of the minors in the mortgage foreclosure suit. Another deputy sheriff testified about serving the summons on Andrew Ferguson, one of the sons of Ned Ferguson.

R. B. Braswell was a witness for appellant. According to his testimony, the land in question was worth about $2 an acre at the time he transferred the mortgage to B. Davis. Braswell bought the note and mortgage in question from Hilton for the amount of the mortgage indebtedness. The land was very poor, and was not worth more than the mortgage indebtedness at the time he sold and transferred the note and mortgage to B. Davis. In December, 1914, he bought three forty-acre tracts adjoining the land in question for $2.50 an acre, and they had better timber than that on the land in question.

Other witnesses testified that the land was not worth more than $2 or $2.50 per acre at the time it was sold under the foreclosure decree. On the other hand, several witnesses for appellees testified that the land was worth between $6 and $10 an acre at that time. A short time before the present suit was instituted oil and gas were discovered in the territory in which the land is situated, and this caused it to increase in value.

Pat McNalley was also a witness for appellant. According to his testimony, the children and heirs-at-law of Ned Ferguson spoke to him about redeeming the land from the mortgage. He told them that he was going to bring a foreclosure suit, and it was agreed that he should write out an acknowledgment of service on the summons to be signed by the heirs-at-law of Ned Ferguson so that the cost of serving the summons would be saved them in case they redeemed the land from the mortgage. This was done, and the purported signature of the defendants to the acknowledgment of service was returned to him by one of them, and the foreclosure decree was taken upon the belief that the signatures were genuine. He denied that the heirs spoke to him about bringing suit to set aside

the foreclosure decree. He says that he left El Dorado in February, 1915, and did not return until November, 1920. In the intervening time he was not engaged in the practice of law, and was not a resident of the State.

B. Davis was a witness for himself. According to his testimony, he paid Mr. Braswell the face of the note, including interest for it, and the mortgage was also transferred by Braswell to him. In 1914 land was very cheap in Union County, Arkansas, and the land in question was worth but little more than he paid for the note and mortgage.

The recital in the mortgage foreclosure decree that the defendants to that suit were regularly served with process is, under our statute, *prima facie* evidence of that fact, and must be taken as true unless there is testimony showing to the contrary. In a direct action by defendants in a foreclosure proceeding to vacate the decree, the burden is upon them to show that there was a want of service upon them. *Williams* v. *Alexander,* 140 Ark. 442; *Crawley* v. *Neal,* 152 Ark. 232, and *First Natl. Bk.* v. *Dalsheimer,* 157 Ark. 464.

Tested by this rule, we think the chancellor erred in finding that there was a want of service upon appellees in the foreclosure suit. It is true that each of the children of Ned Ferguson and one of his grandchildren testified that they were not served with summons in the foreclosure suit; but, when all the surrounding circumstances are considered, it does not appear to us that their testimony overcomes the *prima facie* case against them. In this connection it may be stated that the evidence showed a service of summons upon Andrew Ferguson. There was also service upon two of the minor defendants by a deputy sheriff. There appears in the record the acknowledgment of service as to some of the adult defendants in the foreclosure suit. Each of them denied that he had signed the acknowledgment of service, but their testimony is contradicted in so many respects that it is not worthy of credence. They all admit that they knew that their father had executed a mortgage on the land,

and that it was due and unpaid at the time of his death. They either knew that the foreclosure suit was brought, or knew that B. Davis had bought the land in at that suit for the mortgage indebtedness. They claim that, in 1916, they attempted to hire Pat McNalley to set aside the decree, but in this respect they are flatly contradicted by McNalley. He testified that, at the time they claimed to have employed him, he was a nonresident of the State, and did not return to the State for several years thereafter. He explains that they talked to him about redeeming the land from the mortgage, and knew that the foreclosure suit had been filed. Some of the children of Ned Ferguson made arrangements with him to write on the summons an acknowledgment of service, to be signed by the other heirs, in order to save costs, if they could get up the money with which to redeem the land from the mortgage. The fact that Hilton sold and transferred the note and mortgage to Braswell for the face of it shows that he did not regard the land as worth much more than the mortgage indebtedness. This would be also true of the transfer from Braswell to Davis. In fact, Braswell testified that the land was not worth much more than the amount of the mortgage indebtedness, and that he bought other land in the same vicinity with better timber on it for $2.50 per acre, about the time the land in suit was sold under the foreclosure decree. Other witnesses testified that the land was worth but little more than the mortgage indebtedness at the time it was sold in the foreclosure suit.

It is true that appellees introduced witnesses who testified that the 180 acres of land in question was worth from six to ten dollars an acre at that time; but this evidence is contradicted by the attending circumstances. Appellees could not raise the money with which to redeem the land from the mortgage. If it had been worth so much more, it would seem that they might have done so. The fact that they waited until oil and gas were discovered in that territory before taking any action in the matter tends to contradict their testimony. They admit

that they knew of the foreclosure suit, and do not give any excuse for waiting five or six years before taking action except the flimsy one that they had employed Mc-Nalley to act for them. He was a nonresident of the State at the time they claimed to have employed him, and the most reasonable explanation of the matter is that the land was not worth redeeming until oil and gas were discovered in the adjacent territory.

In addition to this, in the case of Sterling Bell, we think the preponderance of the other evidence shows that he signed the acknowledgment of service of summons. It is also claimed that the acknowledgment of the service of summons was not accompanied with the formalities required by the statute. As we have already seen, the burden of proof was upon appellees in this respect. It may be that there was an amendment to comply with the statute, and the presumption is that such was the case. Under our statute the recital in the decree that service of summons was had upon the defendants in the manner required by law makes a *prima facie* case in favor of the plaintiff, and the burden is on the defendants to show a want of service or fraud in procuring service on them.

In the light of the attending circumstances, we think the learned chancellor erred in finding for the appellees in this respect, and, for that error, the decree will be reversed; and, inasmuch as the case seems to have been fully developed, upon remand the chancellor will be directed to dismiss the complaint of appellees for want of equity. It is so ordered.