HORN *v.* HULL.

Opinion delivered October 5, 1925.

1. JUDGMENT—CONSTRUCTIVE SERVICE—RETRIAL.—Crawford & Moses' Digest, § 6266, providing that a defendant constructively summoned and who does not appear may, at any time within two years after the rendition of the judgment, and not thereafter, appear in open court and move to have the action retried, does not provide a right of redemption from the sale of mortgaged property, but only a retrial of the cause, and, if successful, defendant may obtain an order on the plaintiff for a restitution of the proceeds of the sale of property.

2. JUDICIAL SALES—INADEQUACY OF PRICE.—Mere inadequacy of price is not ground for setting aside a judicial sale unless the price is so grossly inadequate as to raise a presumption of fraud or unfairness.

3. JUDICIAL SALES—INADEQUACY OF PRICE.—Evidence *held* not to establish that property was sold at judicial sale for a grossly inadequate price.

4. JUDGMENT—PREMATURE RENDITION—REMEDY.—While the premature rendition of a decree is erroneous, the remedy to correct the error is by appeal to the Supreme Court, and not by motion to vacate the decree in the court which rendered it after adjournment of the term.

5. JUDGMENT—RELIEF AGAINST DEFAULT—MERITORIOUS DEFENSE.—Before a court of equity will relieve against a judgment by default for want of service on the defendant, the latter must aver and prove that, if the relief is granted, a result will be obtained different from that reached by the judgment complained of.

6. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A finding of the chancellor that the defendants in a foreclosure

proceeding were served with process and knew of the pendency of the proceeding will not be set aside on appeal where it is not against the weight of the evidence.

7. EQUITY—LACHES.—The doctrine of laches rests upon the principle that, if one maintains silence when he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent.

8. EQUITY—LACHES.—Where the defendants in a foreclosure suit remained silent while those purchasing under the sale expended large sums of money in drilling oil and gas wells in the land in question, and waited three years until the property had greatly enhanced in value before suing to set aside the sale, they are barred by laches.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellants brought this suit in equity against appellees to set aside a decree of foreclosure and sale thereunder by the commissioner of certain lands in Union County, Ark., and also to set aside certain deeds executed by the purchaser at the foreclosure sale to subsequent purchasers of said lands.

Appellants interposed several defenses to the action. J. M. Wells, Samuel A. Martin, and J. R. B. Moore originally owned the lands involved in this suit and gave a deed of trust in favor of D. D. Hull, Jr., to secure an indebtedness to him of $27,000 and the accrued interest and a balance of $4000 due him on a judgment against them. The lands included in the deed of trust comprised 3875 acres, and are set out in the complaint. Wells, Martin and Moore entered into a contract with Leo, Harry, and Ben P. Horn to sell and exchange said lands with them for their equities in certain real estate owned by them in Memphis, Tenn., and the balance to be paid in money. Pursuant to this contract, Leo, Harry, and Ben P. Horn executed to Wells, Martin and Moore, eighteen promissory notes aggregating $58,575, all dated February 15, 1915, and extending over a period of ten years. Leo, Harry, and Ben P. Horn executed a

deed of trust to said lands to W. E. Patterson, trustee, to secure said indebtedness. The notes and deed of trust were at once indorsed and assigned by Moore, Wells and Martin to D. D. Hull, Jr. in lieu of the original deed of trust to said lands to him from Moore, Wells and Martin. On December 9, 1915, Leo, Harry and Ben P. Horn conveyed said lands to S. L. and J. C. Cockroft, who assumed to pay off the indebtedness to D. D. Hull, Jr. Default was made in the payment of the first note for $3000, which was due on February 1, 1916. Default having been made in the payment of the first note, under the terms of the deed of trust, the whole indebtedness aggregating $58,575 became due and payable. On the 7th day of July, 1916, D. D. Hull, Jr., and W. E. Patterson, trustee, filed a bill in the chancery court of Union County, Ark., against Leo, Harry, and Ben P. Horn and S. L. and J. C. Cockroft and J. M. Wells, Samuel A. Martin and J. R. B. Moore, to foreclose said deed of trust. J. R. B. Moore and J. M. Wells were personally served with summons. Moore made default but Wells defended the suit to some extent. The three Horns, two Cockrofts and Samuel A. Martin were proceeded against as non-residents, and the decree recites that they were constructively summoned by publication of a warning order and by service upon each of them of a certified copy of the complaint with the summons attached.

On the 9th day of September, 1916, a decree of foreclosure was entered of record, and time was fixed in the decree for the payment of the indebtedness in the sum of $51,599.50. The decree recited that if this amount together with the amount found due for taxes with interest on each sum be not paid on or before October 18, 1916, a commissioner appointed for that purpose, should proceed to sell the lands pursuant to the terms of the decree and apply the proceeds of sale as directed by the court. The report of sale recites that the lands were sold on November 21, 1916, to D. D. Hull, Jr. A commissioner's deed was executed to D. D. Hull, Jr., the purchaser of the lands described in the decree, on March

5, 1917, and this deed recites that it was presented in open court for approval and by the chancery court examined and approved. The clerk's certificate shows that the commissioner's deed was filed for record April 11, 1917, and recorded on the same day. On the first day of June, 1917, D. D. Hull, Jr., executed a deed to said lands to Thomas Polk and Harry Ezzell for a consideration recited to be partly in cash and partly on a credit.

On February 21, 1921, Harry Ezzell executed to his two sons, Harry Ezzell, Jr., and Sharp Ezzell a deed conveying to them an undivided two-thirds of an undivided one-half interest in said lands. During the years 1921 and 1922 Polk and Ezzell executed oil and gas leases to a part of said lands. In May, 1920, S. L. Cockroft died intestate, leaving his widow and seven children. For some time prior to his death he had not lived in Memphis, Tenn., where Leo, Harry, and Ben P. Horn have lived during all the time embraced by the matters in this lawsuit. S. L. Cockroft died somewhere out west on May 6, 1920. Sometime prior to the death of S. L. Cockroft, Leo, Harry and Ben P. Horn had endeavored to effect a settlement with him with the view of having him pay off the mortgage indebtedness and conveying the lands back to them. The Horns found out from Cockroft that the deed of trust on the lands in controversy had been foreclosed, and they had been endeavoring to get Cockroft to pay off the indebtedness secured by the deed of trust in order that they might file a suit to set aside the decree of foreclosure and to recover the lands. After S. L. Cockroft died, the attempted settlement was delayed because one of Cockroft's boy had gone to the World War, and two of them were minors. The settlement was not effected until sometime in July or August, 1923, when the Horns procured deeds from the widow and all the Cockroft children. The present suit was instituted on September 7, 1923. Oil was discovered in and around El Dorado, Union County, Ark., in 1921, and the land has greatly increased in value since that time. About twenty-one

wells have been drilled on the lands in controversy and at a conservative estimate lands in dispute are now worth five or six hundred thousand dollars.

Other facts will be stated and discussed under appropriate headings in the opinion.

The chancellor made a general finding as to all matters of law and fact in favor of appellees, who were the defendants in the chancery court. It was therefore adjudged and decreed by the court that the complaint of appellants, who were plaintiffs in the court below, be dismissed for want of equity.

The plaintiffs, Leo, Harry, and Ben P. Horn, have duly prosecuted an appeal to this court and are designated appellants here.

*R. C. Brown,* for appellant.

*Patterson & Rector,* for appellee.

HART, J., (after stating the facts.) It may be stated at the outset that the court did not err in refusing to vacate the original foreclosure decree on application of the appellants in that action under § 6266 of Crawford & Moses' Digest. The statute provides that a defendant constructively summoned, and who does not appear, may at any time within two years, and not thereafter, after the rendition of the judgment appear in open court and move to have the action retried. In such cases there is no right of redemption from the sale of the mortgaged property, and the only remedy for the defendant is that afforded by the statute, to have a retrial of the cause and, if successful, to obtain an order on the plaintiff for a restitution of the proceeds of the sale of the property. *Gleason* v. *Boone,* 123 Ark. 523.

It was also held in that case that mere inadequacy of price is no ground for setting aside a judicial sale unless it is so gross as to raise a presumption of fraud or unfairness. This rule has been repeatedly declared by this court and has been so uniformly adhered to that a further citation of cases in support of it is unnecessary.

In this connection it may be stated that the property was sold under the foreclosure decree before the dis-

covery of oil and gas in the territory where they were situated and before the lands had risen in value at all. There is no testimony in the record tending to show that the price at which they were sold was grossly inadequate. Indeed, the attending circumstances point to the contrary.

In January 1915, Wells, Martin and Moore, who then owned the lands involved in this suit, sold them to appellants for the equities which appellants owned in certain property in Memphis, and the further consideration that appellants would assume certain indebtedness on the property owed by the grantors to D. D. Hull, Jr. Appellants then sold the property to the Cockrofts upon consideration that they should assume the mortgage indebtedness to D. D. Hull, Jr. They knew that the original indebtedness to D. D. Hull, Jr., was past due when they bought the lands from Wells, Martin and Moore. Appellants also knew that D. D. Hull, Jr., had canceled the old indebtedness in consideration that they should assume the amount of it and execute a new mortgage or deed of trust to him. They knew that the Cockrofts had assumed the indebtedness, and that one of the notes became due in February, 1916. They are presumed to have read over the deed of trust and to have known that the failure to pay this note made the whole of the indebtedness due and payable. They resided in Memphis at the time the foreclosure decree was rendered, and their general inattention to the matter shows that they did not anticipate any great increase in the value of the lands. Indeed, the increased value was due solely to the discovery of oil and gas in that territory in 1921, which was several years after the lands were sold under the foreclosure decree.

It is next insisted that the foreclosure decree was prematurely entered of record, and that no service of summons was had in that proceeding upon appellants. The mere fact that the decree might have been prematurely entered of record does not entitle appellants to the relief sought here. The premature rendition of a

decree is erroneous; but the remedy to correct the error is by appeal to this court, and not by motion to vacate the decree in the court which rendered it after adjournment for the term. *Old American Ins. Co.* v. *Perry,* 167 Ark. 198.

Counsel for appellants contend that there was not proper service upon them in the mortgage foreclosure proceedings, and on this account the chancery court should have set aside the decree of foreclosure and the sale thereunder. Conceding that no service was had upon appellants in that suit, they are not entitled to the relief sought. This court has repeatedly held that the better established rule unquestionably is that, before a court of equity will relieve against a judgment for want of service on the defendant, the latter must aver and prove that, if the relief is granted, a result will be obtained different from that reached by the judgment complained of. *Broadway* v. *Sidway,* 84 Ark. 527; *State* v. *Hill,* 50 Ark. 458; *Williams* v. *Alexander,* 140 Ark. 442; *Jerome Hardwood Lumber Co.* v. *Jackson-Vreeland Land Corporation,* 160 Ark. 303; *McDonald Land Co.* v. *Shapleigh Hdw. Co.,* 163 Ark. 524; and *H. G. Pugh & Co.* v. *Martin,* 164 Ark. 423.

It has been well said that infinite confusion and mischief would ensue if the rule were otherwise. No meritorious defense to the foreclosure proceedings is set up or attempted to be proved in the case at bar. The mortgage indebtedness was due at the time that the foreclosure decree was entered of record. The only claim of appellants is that the lands were sold for an inadequate price, and, as we have already seen, this is no defense unless it could be shown that the price was grossly inadequate. It does not appear from the record that the lands sold under the foreclosure decree for a grossly inadequate sum. The price of the land, as we have already seen, did not increase for several years afterwards, and the increase then was due solely to the discovery of oil and gas in the vicinity. Then too the chancellor made a general finding of all the issues of law and

fact against the appellants. This included a finding that
they were served with process in the mortgage foreclos-
ure proceedings. The burden of proof was upon appel-
lants to show to the contrary. *Davis* v. *Ferguson,* 164
Ark. 340.

The record in the case recites that appellants and
the Cockrofts were non-residents of the State of Arkan-
sas and were served with a certified copy of the com-
plaint with summons annexed, and also that a warning
order for each of said non-residents was duly issued and
published.

It is true that all three of appellants testified that
they were not served in the case and did not know of
the rendition of the foreclosure decree until after the
lands were sold. It will be remembered that the lands
have greatly increased in value and are now worth
between five and six hundred thousand dollars. Appel-
lants are therefore greatly interested in setting aside
the mortgage foreclosure proceedings; and their testi-
mony is directly contradicted by Percy Galbreath. It
is undisputed that the Horns, the Cockrofts, and Gal-
breath all lived in Memphis, Tenn., at the time of the
foreclosure proceeding. Galbreath testifies that he
remembered perfectly well serving a copy of the com-
plaint upon the Horns and the Cockrofts. There
appears a return made by him at the time which he recol-
lects having made. Judge Patterson, who was the
attorney for the plaintiffs in the foreclosure proceedings,
testified that he remembered very distinctly of having
a warning order for appellants published four times in
a weekly newspaper published in El Dorado, Ark., and
that he gave the attorney *ad litem* in the case the
addresses of appellants and of the Cockrofts. Judge
Patterson remembers distinctly of bringing the response
of the attorney *ad litem* and the proof of the publication
of the warning order in court and filing them. Judge
Patterson was trustee in the deed of trust, and his recol-
lection about the matter is on that account definite. It is

worthy of note that the attorney *ad litem* of the non-resident defendants died in November, 1921.

J. M. Wells, one of the defendants in the foreclosure suit, made a partial defense to the action. According to his testimony, he had the most to do with making the contract with the Horn brothers. He received notice from Hull that one of the notes for the lands given by the Horn brothers was due, and that default had been made in the payment of the note. Wells notified the Horn brothers that he had received notice of default in the payment of the notes and asked them to make satisfactory arrangements. He received no reply to this letter. When he was advised that a decree had been rendered in the case, he notified them by letter and told them something had to be done or the lands would be sold. He stated further that the lands were not worth at the time more than the mortgage indebtedness.

Under these circumstances, it can not be said that a finding by the chancellor that appellants had been served with process in the foreclosure proceedings and knew of the pendency of that suit is against the preponderance of the evidence, and it is well settled in this court that a finding of fact made by a chancellor will not be set aside upon appeal unless it is against the weight of the evidence.

If appellants knew of the pendency of the foreclosure proceedings and failed to assert their rights, it is now too late for them to have the decree set aside on the ground that they were not served with process. *Holman* v. *Lowrence*, 102 Ark. 252; *Little Rock Chamber of Commerce* v. *Reliable Furniture Co.*, 138 Ark. 403; and *Crawley* v. *Neal*, 152 Ark. 232.

Counsel for appellees have also invoked the plea of laches, and we are of the opinion that, under the facts established by record, appellants are barred of any relief on this account.

As we have already seen, the foreclosure decree was entered of record on the 9th day of September, 1916, and the lands were sold on November 21, 1916, pursuant to

the terms of the decree. The deed executed by the commissioner shows that the sale was approved by the court on the 5th day of March, 1917. According to the evidence of appellants, S. L. Cockroft died in May, 1920, and they knew sometime prior to his death of the existence of the foreclosure decree and the sale thereunder. This suit was not commenced until the 7th day of September, 1923. Appellants attempt to give reasons for their delay in the premises; but none of them are satisfactory. It appears from the record that oil and gas were discovered in that territory in the early part of 1921 and that valuable oil and gas leases were given on part of the lands in controversy during the years 1921 and 1922. Hull had sold the lands to Polk and Ezzell. They in turn had executed the oil and gas leases to other parties and had received considerable sums of money therefor. Twenty-one oil and gas well were drilled on the lands, and the lands have greatly increased in value since the first part of 1921. At a conservative estimate they are now worth between five and six hundred thousand dollars.

As above stated, appellants knew of the existence of the foreclosure decree before the death of S. L. Cockroft in May, 1920. No excuse is made by them for their delay in bringing the suit, except that one of the Cockroft boys was a soldier in the World's War and that two of them were minors, and that for this reason they could not effect a settlement with them until just before this suit was brought on September 7, 1923.

The doctrine of laches which is a species of estoppel rests upon the principle that, if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Gibson* v. *Herriott,* 55 Ark. 85; *Jackson* v. *Becktold Printing & Book Mfg. Co.,* 86 Ark. 591: *Davis* v. *Harrell.* 101 Ark. 230: *Brownfield* v. *Bookout.* 147 Ark. 555; and *Stewart Oil Co.* v. *Bryant,* 153 Ark. 432.

Under these and many other decisions of this court which might be cited, the general rule of the doctrine of laches is that equity may in the exercise of its own inher-

ent powers refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the particular relief asked. Each case must be governed by its own facts; what would be an unreasonable delay in one case might not be in another. We deem it sufficient to say that the delay in this case extended over a period of nearly three years and during a part of this time, oil wells were being drilled in that territory. Appellants could not wait until the drilling of these wells on the lands in question and in that vicinity had caused them to increase greatly in value before they brought this suit. They could not stand by and see other parties in good faith expending large sums of money drilling oil and gas wells and wait until the property was greatly enhanced in value thereby before asserting their rights. This would be contrary to the plainest principles of equity and natural justice.

Under all the circumstances of the case, we are of the opinion that the decision of the chancellor was correct, and the decree will therefore be affirmed.