The Federal Land Bank of St. Louis *v.* Cottrell.

4-5369                                         126 S. W. 2d. 279

Opinion delivered February 13, 1939.

*G. V. Head, J. R. Crocker, John M. Rose* and *Mahoney & Yocum,* for appellants.

*C. M. Martin, Don McLeod* and *J. R. Wilson,* for appellees.

SMITH, J. William D. Cottrell owned a 160-acre tract of land in Union county, on which he resided as his homestead. On July 1, 1922, he executed a mortgage on the land, in which his wife joined, to secure the payment of a loan of $1,200, which he had obtained from the Federal Land Bank of St. Louis. Cottrell died July 21, 1929, and was survived by Ida, his wife, and seven children. The widow died October 17, 1933, survived by the seven children.

Default was made in meeting payments of principal and interest and of taxes, and on January 27, 1936, the bank filed suit to foreclose the mortgage, making the children of Cottrell parties, and a *lis pendens* notice was filed the same day. A foreclosure decree was rendered July 14, 1936, and the report of sale made pursuant thereto was confirmed October 15, 1936. The amount due the bank at the time of the foreclosure decree was $1,429.55, exclusive of the costs. This finding is not questioned. The bank became the purchaser at the commissioner's sale made pursuant to the above decree upon a bid $60 less than the debt. After receiving the commissioner's deed, which had been duly approved, the bank, on March 8, 1937, sold the land to J. M. Bishop, retaining one-half of the royalty in minerals.

On June 29, 1937, the heirs of the mortgagors filed suit to vacate the decree of foreclosure, the sale had thereunder, and all proceedings had with reference thereto, and prayed that they be allowed to pay the amount due under the mortgage, and to cancel all deeds executed by reason of the foreclosure proceeding, and to quiet and confirm their title, and from a decree granting the relief prayed is this appeal.

A number of questions are discussed in the respective briefs of opposing counsel which we find unnecessary to consider and decide. The most important question in the case is the one of fact whether Marie Cot-

trell, a daughter of the mortgagors, had been served with summons. It was alleged that Flois Primm Cottrell, the wife of Espie Cottrell, who was a son of the mortgagors, had not been served with process, and that proper defense had not been made for Alvin and Annis Cottrell, minor children of the mortgagors.

Disposing of these contentions in inverse order, it may be said that the court made the specific finding that the heirs, "and each of them, were of legal age prior to January 27, 1936," the date on which the foreclosure suit was filed. This finding of fact is very clearly established. Alvin was 21 years of age on January 12, 1936, which was 15 days prior to the filing of the foreclosure suit, and Annis, a daughter, was 18 years old on September 16, 1935, which was more than four months prior to the filing of the foreclosure suit. It is argued that Annis' right of homestead had not been foreclosed, because that right would continue until she was 21 years old, and could not be foreclosed until she had attained the age of 21 years.

We do not think so. We know of no case in which it has ever been held that the right to foreclose a mortgage on a homestead executed by a mortgagor who subsequently died and left minor children is postponed until such child or children shall attain the age of 21. The mortgage foreclosed was not executed by Annis, but by her father and mother. It was, however, said in *Shapard* v. *Mixon,* 122 Ark. 530, 184 S. W. 399, "there can be no doubt of the power of a girl over the age of eighteen, and under twenty-one, to convey her interest in the homestead derived from a deceased parent." But, as we have just said, the mortgage foreclosed was not executed by Annis, but by her father and mother, and the interest which she inherited was taken subject to the mortgage, and the right to foreclose the mortgage upon default cannot be postponed because of the fact that Annis was not 21 years old. Citation of authority upon this proposition appears unnecessary.

Section 6215, Pope's Digest, reads as follows: "Males of the age of twenty-one years, and females of

the age of eighteen years, shall be considered of full age for all purposes, and, until those ages are attained, they shall be considered minors.'' As Alvin and Annis were both of full age when the suit was filed, it was unnecessary to appoint a guardian *ad litem* to represent them, although one was appointed, who filed answer as such, the sufficiency of which, to put in issue all the allegations of the complaint in the original foreclosure suit, is not questioned. The complaint filed in the foreclosure suit had alleged the minority of Alvin and Annis, and that admission was made in the answer filed in this proceeding, but an amendment to this answer was filed in which that admission was withdrawn, and it was then alleged that Alvin and Annis were in fact of legal age at the time the foreclosure suit was filed.

Flois Primm Cottrell, the wife of Espie Cottrell, was not made a party to the suit, and was not served with process, but it was not essential that she should be. She did not marry Espie until February 22, 1936, or nearly a month after the filing of the foreclosure suit and the *lis pendens* notice.

At § 91 of the chapter *Lis Pendens,* 38 C. J., p. 54, it is said: ''The doctrine of *lis pendens* applies as a general rule to all persons acquiring an interest in the subject of litigation during the pendency thereof, whether by purchase or otherwise, including corporations, whether public or private. The doctrine is not confined to purchasers.''

In the case of *Hobbs* v. *Lenon,* 191 Ark. 509, 87 S. W. 2d 6, devisees of mortgaged lands attacked the decree foreclosing the mortgage upon the ground that they had not been made parties to the foreclosure proceeding. It was there said: ''The record here shows that the devise to appellants was made during the pendency of the foreclosure suit against the lands devised. The general rule is that whoever acquires the subject-matter of the suit *pendente lite* takes subject to the decree or judgment which may be rendered in such suit.''

It was not essential that Mrs. Espie Cottrell be made a party, as any interest she may have acquired in

the land by virtue of her marriage to one of the heirs was acquired after the suit, and *lis pendens* notice had been filed, and she took that interest subject to the final determination of that cause. If it were essential to make every person a party who acquires an interest in the subject-matter of litigation, during its progress, litigation would be interminable.

The most serious question in the case is the one of fact whether Marie Cottrell, one of the daughters of the mortgagors, was served with process in the case. The testimony upon this issue is in irreconcilable conflict. The chancellor found Marie had not been served, and upon that finding granted the relief prayed.

We do not concur in this finding of fact. Testimony was offered to the effect that during all the time between the issuance of the summons and the date of its return as served Marie Cottrell was not in Union county, but was, in fact, in the state of Texas, where she was employed with others by a portrait company. The members of this party all testified that Marie continued with them in this service in the state of Texas from a date prior to the issuance of the summons until March 28. The date of the sheriff's return on the summons was March 10. The testimony of some of the members of this party taking portrait orders was that Marie Cottrell returned to Union county March 21, but all stated that she did not return prior to that date, and Marie Cottrell testified that she did not return to Union county, her home, where the foreclosure suit was pending, until March 28, and that she was never served and could not have been served in Union county, as she was absent from that county at the time of the alleged service. Members of Marie's family gave testimony to the same effect.

Opposed to this testimony was that of J. M. Bishop, his wife and daughter, to the effect that Marie Cottrell was in their home in Union county on March 8. This testimony of Bishop and the members of his family is weakened by a consideration of Bishop's interest in the matter, as it was he who purchased the land from the bank after the bank had received the commissioner's deed.

It is the testimony of the deputy sheriff who made the return which convinces us that he did serve the summons as was shown by his return. Except for a period of two years this officer had been connected with the sheriff's office since 1921, and during that time had been sheriff himself, and he was thoroughly familiar with service of process. He testified that he went to the Cottrell home to serve the summons, and was told that Marie was in Texas. He returned the second time to his home to complete the service. Certain of the heirs were not found by the officer, and he made a *non est* return as to them. The officer testified that he had no distinct recollection of serving Marie, but he was very positive in his statement that he had never made a return of service unless the service had been had, and that if he had not served Marie he would have made a *non est* return as to her as he did in the case of two other heirs whom he failed to find. Service upon these two was had by the publication of a warning order.

It must be remembered that this is an attack upon a decree which recites personal service upon Marie, and while it is permissible to show that recital to be false, this showing must be made by something more than a mere preponderance of the evidence. It is not required that the showing be made beyond a reasonable doubt, but it is required that such testimony be clear and convincing. In the chapter on Process, 50 C. J., p. 578, § 301, it is said: "In view of the evidentiary weight accorded to a return of process, and of the presumptions in its favor, clear, unequivocal and convincing evidence is required to negative the return and overcome its statements and recitals; and a mere preponderance of the evidence in favor of one contradicting a return is ordinarily insufficient. Proof beyond a doubt, however, is not necessary." Subjected to this test, we conclude the testimony to the effect that Marie was not served is insufficient to establish that fact.

Moreover, there is no contention that the debt secured by the mortgage was not due and unpaid when the foreclosure decree was rendered, but it is contended

only that Marie Cottrell has the right to redeem, because she was not served with process. The recent case of *Sweet* v. *Nix, ante* p. 284, 122 S. W. 2d 538, is against that contention. There a decree of foreclosure was rendered at a time when all the heirs of the deceased mortgagor were minors. The sufficiency of the service upon them was questioned, and the right to redeem was claimed upon the ground that the minors had not been properly served in the foreclosure suit. In that case, as in this, the bill to redeem was filed after the expiration of the term of court at which the foreclosure decree had been rendered. It was there said: "Not only is there no valid defense shown to the foreclosure action, but none is attempted to be alleged or stated in the complaint herein. Numerous cases might be cited to the effect that failure to allege a meritorious defense to an action in which the judgment or decree sought to be set aside was rendered is fatal to the action. Some of the later cases are: *H. G. Pugh & Co.* v. *Martin,* 164 Ark. 423, 262 S. W. 308; *Horn* v. *Hull,* 169 Ark. 463, 275 S. W. 905; *Adams* v. *Mitchell,* 189 Ark. 696, 74 S. W. 2d 969. In the last cited case it was held that before a defendant may question the service upon which a judgment was rendered he must show the existence of a defense to the suit which terminated in the judgment."

In stating the reason for this rule it was said: ". . . Courts should not be required to do vain and useless things, and it would be a vain and useless thing to set aside a judgment to which there was no defense and the same result would necessarily follow on a new trial."

Here, as there, a new trial could result only in a decree of foreclosure, and upon the authority of the case from which we have just quoted a reversal to permit a redemption must be denied here, as was done there.

In this connection, it may be said that the discovery of oil on nearby land has given the land here mortgaged a value it did not previously have, and, further, that Espie Cottrell, who apparently represented all heirs, was given the opportunity to buy the land from the bank for

himself, or for all the heirs, upon the same terms which Bishop accepted.

The decree of the court below will, therefore, be reversed, and the cause remanded, with directions to dismiss the proceeding to vacate the foreclosure decree and to cancel the deeds from the commissioner to the bank and from the bank to Bishop.