ABRAMS v. CITIZENS BUILDING & LOAN
ASSOCIATION.

Opinion delivered July 10, 1916.

1.   BUILDING AND LOAN ASSOCIATIONS—FORECLOSURE OF MORTGAGE
     LOAN—COMPUTATION OF AMOUNT DUE.—Unless there is an express
     provision in the building and loan contract providing a method of
     settlement with defaulting borrowers, the rule for determining
     the amount due in cases of foreclosure of building and loan mort-
     gages is to ascertain the amount of stated dues and interest which
     will become due during the future existence of the association (the
     particular series of stock) as estimated. Then find the principal
     which, with interest for the supposed time, will amount to the dues
     and interest already calculated. This will be the present value of the
     anticipated payments; to this principal add the arrearages due, and
     the fines for the time between the date of default and the entry of
     the decree of sale.

2.   SAME—SAME—SAME.—In computing the present worth of the an-
     ticipated payments, the interest should be computed for the
     average time of the payments which would be one-half of the time
     from the date of the decree to estimated maturity.

Appeal from Pulaski Chancery Court; *Jno. E.
Martineau*, Chancellor; reversed.

*Sam Frauenthal* and *Bruce T. Bullion*, for appellants.

1.   The accountant Hennegin erred in the manner
in which he estimated the amount due upon the stock
and loans. He also failed to give credit for numerous
payments made, and the court erred in following his
findings and report as to the amount due. The account-
ant did not make the estimate in accordance with the
rule laid down by this court as to delinquent borrowers.
62 Ark. 572. The amount due upon loans totaled
$7,510.73. From this should be deducted the credits for
amounts paid; the Green loan, Sawyer notes and rents
collected $3,161.47, leaving only due a balance of $4,349.26
in June, 1913.

2.   The testimony clearly shows that appellant made
payments for which she never received any credit. The
evidence is clear. Nor was she credited with rents col-
lected and other items to which she was clearly entitled.

Appellee was a mortgagee in possession and chargeable with rents.

3.   It was error to declare a lien upon 110 feet of the property, when only 100 feet was covered by the mortgage.

4.   The other accountants followed the rule in 62 Ark. 572, and the amount found due was only $4,351.19. This is the largest amount for which the decree should have been rendered.

*Roscoe R. Lynn*, for appellee. · *Cockrill & Armistead*, of counsel.

1.   On the cross-appeal appellee contends that the court erred in allowing credit for $238.00, being six months' interest and dues credited on the pass books.

2.   The rule in the Roberts Case 62 Ark. 572, is not the correct rule and should be overruled.   71 Ark. 104; 68 *Id.* 24; 73 *Id.* 522; 74 *Id.* 56; 56 *Id.* 337; 69 *Id.* 356; 74 *Id.* 220; 75 *Id.* 497; 69 *Id.* 616; 43 L. R. A. (N. S.) 874, 886; 59 S. W. 35; 85 *Id.* 231.   No rule of property is involved.   47 Ark. 359; 1 S. W. 702.

3.   The rule in the Roberts Case does not apply. Defaulting members are not entitled to share in the profits.   Endlich on Build. Asso., §§ 99, 100, 149, 480-481-482; 6 Cyc. 13. By-laws change the rule. 65 Ark. 575; 4 Enc. of Law (2d ed.), 1075-1077.   In the Roberts Case the court made a mathematical error.   See 5 Weekly Law Bulletin, 364.

4.   The Chancellor's findings will be sustained unless clearly against the preponderance of the evidence.   73 Ark. 489.

McCulloch, C. J.   Appellee is a corporation, domiciled at the city of Little Rock, engaged in business as a building and loan association according to the plan peculiar to that character of business.   Its business is governed by certain by-laws, and it issues stock from time to time in series to be matured by payment of monthly dues of the members and the accumulation of interest from borrowers.   Maggie G. Abrams, one of the appellants, took stock in the Association and borrowed money on the

stock and mortgaged certain real property in the City of
Little Rock to secure the payment of the loans.  Her
husband, C. W. Abrams, who is also one of the appellants,
joined in the execution of the mortgages.  There were
five loans, aggregating $7,600.00 made during the period
of about two years from 1904 to 1906.  Mrs. Abrams
failed to meet her monthly payments, and appellee insti-
tuted this action in the Pulaski Chancery court on April
12, 1912, against C. W. and Maggie G. Abrams, to foreclose
the mortgages.

Appellants appeared in the action by their attorneys
and filed an answer and joined in a request for the appoint-
ment of an accountant to state the account between the
parties, and pursuant to that stipulation the court
appointed H. W. Hennegin, an expert accountant, as
special master to state the account.  The master filed his
report, to which exceptions were made by appellants
but subsequently withdrawn, and the Chancery Court
on June 2, 1913, rendered a final decree in favor of appellee
for recovery of the sum of $8,800.79, which was the amount
reported by the master, and decreed foreclosure of the
mortgages.

On August 6, 1913, which was during the same term
of court at which the decree was rendered, appellants
appeared by attorneys and filed a petition to set aside the
decree and re-open the cause for further hearing.  No
formal order is found in the record setting aside the
decree, but it is evident that such an order was made, for
there were further proceedings had in the court from time
to time and the final decree rendered November 24, 1915,
recites the fact that the decree of June 12, 1913, had been
set aside by an order of the court rendered on October 4,
1913.  At any rate the decree was treated as having been
set aside, and there is no point made here against the
further consideration of the cause.  Further testimony
was heard by the chancellor and in the last decree the
amount of recovery was fixed by the court at the sum of
$6,852.00, as of the date of the original decree (June 2,
1913), together with the additional sum of $295.00 paid
out by appellee in taxes, insurance and other expenses

since the date of the original decree, making the total sum of $7,147.00, with interest from June 2, 1913, which the court decreed to be a lien on the mortgaged property.

Mrs. Abrams in her answer denied that she owed any balance on the mortgage debts except a comparatively small sum, but the expert accountants, whose testimony she relied on, figured the balance of the indebtedness to be a large sum, but somewhat less than the amount found by the court. Mrs. Abrams also disputed the correctness of some of the loans and claimed that she had made large payments on the loans for which she had received no credit, but the court found against her on those issues of fact, except as to certain payments on monthly dues aggregating the sum of $238.00. The record is voluminous and involves an examination of the somewhat intricate statements of the master and other accountants who testified, and there is a conflict in the testimony of the witnesses—Mrs. Abrams on the one side and the secretary of the appellee association and other witnesses on the other side—and upon consideration of it all we are unable to discover any error in the findings of the chancellor upon the issues of fact. The chancellor's findings seem to be in accord with the preponderance of the evidence, or at least they are not against the preponderance of the evidence.

It appears from the testimony adduced by appellee that the stock issued to Mrs. Abrams was cancelled and re-issued from time to time because of the fact that she became delinquent on the dues, and in order to prevent a foreclosure it was necessary to reissue the stock so as to cover the delinquency. Mrs. Abrams now objects to that procedure, but the evidence is sufficient to warrant the finding that it was done for her benefit and that she consented to it. We find nothing in the decree which is prejudicial to the interest of appellants. They owe at least the amount decreed against them, and so far as concerns their appeal there is no reason for disturbing the decree.

There is, however, a cross-appeal which raises other questions, particularly the method adopted by the court in fixing the terms of the settlement between the parties. It is contended by counsel for appellee that the court

adopted a method of settlement which is contrary to that in vogue among building and loan associations and contrary to the weight of authority as expressed in decisions of the courts of the country. In *Roberts* v. *American Building & Loan Association*, 62 Ark. 572, this court declared the following rule for settlement in cases' of foreclosure of building and loan mortgages: "Ascertain the amount of stated dues and interest which will become due during the future existence of the corporation (the particular series of stock), as estimated; then find the principal which, with interest for the supposed time, will amount to the dues and interest already calculated; this will be the present value of the anticipated payments; to this principal add the arrearages due, and the fines for the time between the date of default and the entry of the decree of sale."

It is argued by counsel with much earnestness that this rule is not only against the weight of authority on the subject, but that it works an injustice to the other holders of stock in the series, in that it gives the delinquent borrowing stockholder the benefit of anticipated profits of the series, whereas the borrower who refuses to pay should be excluded from participation in the profits. They contend that the more equitable rule would be to charge the borrower with the sums originally borrowed with unpaid interest up to the date of foreclosure, and then give credit for dues paid, with interest from the respective dates of the payments up to the time of the foreclosure, and that the difference between those two sums should represent the correct amount due by the borrower. It is urged that this method of settlement gives the borrower the full benefit of his payments with interest at the same rate which he has contracted to pay. In other words, that it is fairer to all the parties to the contract to merely give the delinquent borrower interest on his payments instead of allowing him to participate in future profits.

There is much force in the contention of counsel on this phase of the case, but we are of the opinion that the rule established in the Roberts case, *supra*, is not without

justice and merit, and since it has been established by the decision of this court it ought not to be disturbed. It has, in other words, become a rule of property. . The rule thus announced preserves the mutuality in the contract, and in that way follows out the common building and loan association plan. It is said that this ignores the possibility of future losses, but we apprehend that the matter of losses is always taken into consideration in estimating the date of maturity of the series. This method of settlement takes nothing from the persistent stockholders that is conferred by their contract. It is contended also that the rule of the Roberts case has been disregarded in subsequent decisions of this court, but we do not think so. The cases of *Hough* v. *Maupin*, 73 Ark. 518, and *Taylor* v. *Clark*, 74 Ark. 220, have laid down a different rule, but those cases related to settlements in insolvent corporations where a different rule necessarily prevails.

This rule does no violence to the by-laws of the Association, and therefore does not constitute the making by the court of a new contract for the parties. The parties have a right to stipulate in advance what the terms of settlement shall be in the event of foreclosure, and a by-law on the subject would constitute the contract. But there is no by-law of appellee association providi g for terms of settlement in case of foreclosure. There is a by-law fixing the terms of withdrawal for borrowing stockholders, but counsel for appellee contend that that was not designed as a provision for settlement with a defaulting borrower and would not be a just rule for that class of stockholders. We agree with counsel that that by-law has no application to settlements with a defaulting borrower. So we have no express provision in the contract between the parties on this particular subject, and it becomes necessary for the chancery court to fix the terms of settlement which are found to result from the contract, and we believe it to be not an unjust method to follow the rule laid down in the Roberts case.

Our attention is called to the fact, however, that in the Roberts case the computation made under the rule was to figure the interest for the whole of the unexpired

time in ascertaining what would be the present value of the aggregate amount of the dues and interest for the future period. It is argued that that computation is not consistent with the rule thus announced, and that it works out an unfair result for the reason that the payments of dues and interest were to be made in monthly installments, and that in estimating the present value of the aggregate amount that fact ought to be considered as the basis of the computation. We think that counsel are clearly right in that contention, and that it would do violence to the contract itself to compute the interest for the whole estimated period of the future life of the series of stock.

A very simple illustration makes the injustice of any other view apparent. If one entered into an obligation to pay a certain aggregate sum in monthly installments, covering a period of years, it would be unjust to figure the present value upon a basis of the payment of the whole amount at the end of the period instead of in installments.

We do not consider the erroneous computation made in the Roberts case as a part of the rule itself, so as to become a rule of property, and since it is called to our attention we do not hesitate to correct it and to declare that in making the computation the interest should be computed for the average time of the payments, which would be one-half of the estimated future period. If the court had observed that method of computation, the decree should have been for the sum of $7,545.04, as of June 2, 1913, with the sum of $295 paid out by appellee since the date added, instead of the sum of $7,147.00 as decreed by the court. The court adopted the date of the original decree as a convenient one from which to compute interest on the amount found to be due, because of the fact that the estimates of the accountants brought down the sum to that date. No complaint has been made of the adoption of that method of entering the decree.

The decree of the chancellor is therefore, on the cross-appeal of appellee, reversed and the cause is remanded with directions to enter a decree in favor of appellee for the sum of $7,545.04, as of the date of the

original decree, June 2, 1913, with the addition of $295 paid out since then, and to decree a foreclosure of the mortgage to satisfy the debt.

It appears, however, that appellee has in writing released from the mortgage fifty feet off the west end of the two lots embraced in the mortgage, leaving the area of the property 100 by 100 feet, but that the chancery court erroneously declared an existing lien in appellee's favor on 100 by 110 feet. This error should be corrected in the decree to be entered on remand of the cause. It is so ordered.