BROWN *v.* MERCHANTS & PLANTERS BANK & TRUST
COMPANY.

4-6375                                    152 S. W. 2d 548.

Opinion delivered June 9, 1941.

*P. L. Smith,* for appellant.

*McMillan & McMillan,* for appellee.

MEHAFFY, J. In the early part of August, 1935, the appellants, T. W. Brown and Cora Brown, borrowed $800 from the appellee, Merchants & Planters Bank & Trust Company, and executed and delivered their promissory note, showing the amount of the monthly payments to be made and the time when they were to be made. To secure the payment of said sums, the appellants executed and delivered to the appellee their deed of trust conveying lots 2, 3 and 4 of block 1 in the original survey of Delight, Arkansas. The monthly installments were $8.49, and the first payment was to be made on September 1, 1935, and the first day of each month thereafter until the principal and interest were fully paid.

The appellants defaulted in their payments and on October 29, 1937, suit was brought in the Pike chancery court against appellants to foreclose the mortgage.

On July 5, 1938, answer was filed by T. W. Brown denying every material allegation in the complaint. The appellant, Cora A. Brown, appeared specially and filed motion to quash service and return. Cora A. Brown was again served, and on May 8, 1939, adopted the answer of T. W. Brown.

Default judgment was taken on September 14, 1939.

It is alleged by the appellants that at the time of the default judgment the appellants were not represented by counsel. The property was ordered sold some

time in January, but the sale was deferred, and on May 11, 1940, the property was again ordered sold. Between March 13, 1940, and May 11, 1940, there was a fire, partially destroying the building on the property. The property was repaired and a settlement made with the insurance company, by which it paid into court the sum of $240 for said damage. The insurance money was paid into court, and there was a contest as to whom it should be paid. The court made an order requiring the material men and laborers to be paid out of the insurance money, and the balance of approximately $108 to be applied on the debt to the appellee, if the property did not bring a sufficient amount from its sale.

In September, 1940, the appellants filed a complaint in the Pike chancery court stating that an action had been filed against them to foreclose the mortgage, and that on September 14, 1939, judgment had been taken against them, and that on May 13, 1940, an additional judgment had been taken; that under the first judgment the property was ordered sold. It was further alleged by them that the judgments were obtained through fraud practiced on the appellants and on the court; that the fraud consisted in that on September 14, 1939, the appellants and appellee entered into an agreement for an extension of time from September 14, 1939, until January 1, 1940, and that additional security was given, and that the appellants agreed to pay $75 for the said extension; that on the same day the agreement was made, the appellee filed an amendment to the complaint for an additional amount, and asked judgment, but the sale was deferred until sometime in 1940; that during the pendency of the action brought by the appellee, the appellants made payments on said indebtedness and agreed to pay the sum of $75 for the forbearance of said debt; appellants alleged that the whole contract was tainted with usury when the agreement was made to pay $75 additional, other than the interest for the forbearance of money. They alleged also that they were entitled to an accounting for the amount paid since filing the cause, and the amounts collected on the additional security.

After the original suit was filed, some payments were made and it was shown that taxes had been paid by the appellee, and it was ordered that appellee have judgment for this amount.

The appellants sought and obtained restraining orders from the circuit court and the county court, in the absence of the chancellor from the county, both of which restraining orders were by the chancery court dissolved, and the complaints dismissed.

The court, on its own motion, consolidated the foreclosure suit with the suit brought by appellants above referred to, and evidence was taken and the court dismissed the complaint of appellants for want of equity. The court entered a decree in favor of appellee, foreclosing the mortgage and ordering the sale of the property.

There were numbers of documents introduced, and the testimony of witnesses heard, but there is practically no dispute in the evidence. The appellants argue that the judgment was obtained by fraud and that the assignment entered into between Brown and the bank, by which the time of sale was extended, was usurious, and that Brown had made certain payments for which he had not been credited, and was therefore entitled to an accounting, and that the sale was improperly advertised.

The court entered a decree finding that summons was duly issued and duly served for the time and in the manner required by law; that the cause is submitted to the court for its consideration and final decree upon plaintiffs' complaint, *lis pendens* notice, the original note and deed of trust, and other evidence. The court found that the appellants were indebted to appellee in the sum of $730.43 with interest and that the sum was secured by the deed of trust on property described therein; that default had been made upon the payment of said note and upon the provisions of said deed of trust; that the appellants waived all rights of redemption and appraisement under the laws of Arkansas; that appellants, T. W. Brown and Cora Brown, his wife, released and relinquished all their rights in dower and home-

stead in said property, and gave a lien on the property described in the deed of trust, fixed the day of sale, and, thereafter, on November 11, 1940, the court approved the sale by the commissioner and ordered a deed executed. The case is here on appeal.

At the first sale had of this property, T. W. Brown himself was present and bid. The property was sold to him and he executed a bond, but he did not pay. There was some evidence about Brown's interest in property in Little Rock, and the sale was continued because of his belief that he would receive something from the Little Rock property, and would thereby be able to pay his debt to the appellee. The evidence, however, shows that nothing was received by Brown or the appellee from the Little Rock property.

It is urged by the appellants that the case should be reversed because fraud was perpetrated in the procurement of the judgment; that the term at which the judgment was obtained was closed before the complaint by Brown was filed; that the appellee was trying to sell the property, and that Brown secured a restraining order under § 8251 of Pope's Digest, and that the property was sold to appellee before the trial of the case brought by Brown; that the chancery judge had no right to do anything without notice to appellants or their attorney. It is stated, however, by appellant that this is not so important to the issue now involved, but they wanted the court to get all the errors complained of. It is also claimed that the evidence shows that payments had been made up to August 14, 1937, and they refer to exhibit 2 in the record, which is the loan record, showing the amounts due monthly and the amounts paid. This, however, was a question of fact, and the chancellor's finding is not against the preponderance of the evidence.

It is contended by the appellants that various payments had been made after suit had been filed, up to and including September, 1938, and that, according to the record, appellants had made eleven payments after August 14, 1937, the day that default judgment was taken; that the loan record was brought to current as

of September 30, 1938. Appellants concede that at the time suit was filed the appellee had a right to foreclose, but they brought the record up to date by payments, and then they got behind again, and it is contended that judgment could not then be taken without a new suit being brought and the appellants served with process. Appellants contend that the fact that appellee continued to receive payments, disentitled the appellee to judgment without bringing a new suit and serving summons, without any notice to appellants. They cite and rely on *Crawley* v. *Neal*, 152 Ark. 232, 238 S. W. 1054.

In that case Crawley, a negro, borrowed $225 from the Peoples Building & Loan Association, and later borrowed from the association an additional sum of $750 and executed a second mortgage. Crawley also executed bonds to the association in which he bound himself to pay all dues upon his shares of stock in the association, and bound himself to pay these dues on the second and fourth Tuesday of each month. Upon making the second loan in that case, the two loans were, by consent, consolidated and carried in one loan. Crawley was not in default of making payments of dues on his first loan, and during all the time that Crawley was in default, fines were being entered against him on the books of the association. When suit was brought against Crawley, he alleged that the association was estopped for the reason that it accepted dues from him on the mortgage which it was seeking to foreclose and without notifying him that they intended to foreclose. The first question decided by the court was that Annie Crawley was not served, and service was not had upon her for her husband. The court also decided, however, that the conduct of the association toward the appellant after the alleged service was tantamount to an abandonment of such foreclosure proceedings and a waiver of its right to take judgment *pro confesso*. The court also held that the association had a right to treat Crawley as in default, and to institute foreclosure proceedings against him, but that it could not do this and at the same time treat him as a stockholder in good standing in the association. It is said that these positions are wholly antagonistic,

and that to pursue one course is a necessary abandonment of the other, and that by this conduct, the association led Crawley to believe that it had abandoned its right to foreclose. We think there is nothing in the Crawley case that supports the theory of appellants in this case. Moreover, the evidence in the case at bar shows, and the trial court found, that appellant Brown was in the court room at the time the judgment was taken.

Appellee concedes that if the loan had ever become current during the pendency of the suit, the suit should have been dismissed and a new suit filed after a subsequent delinquency.

The Iowa Supreme Court said: "But in no case has it been held that the acceptance of a payment of less than the total amount of interest, *per se,* constituted a waiver of the right to foreclose. The mortgagee cannot be penalized for the mere receipt of that to which he is in equity and good conscience entitled." *Jewell* v. *Logsdon,* 200 Ia. 1327, 206 N. W. 136; 41 C. J. 861.

Appellants cite and rely on *American Employers' Liability Ins. Co.* v. *Fordyce,* 62 Ark. 562, 36 S. W. 1051, 54 Am. St. Rep. 305. In that case the court said: "By the express terms of the policy, the insurance company was liable to the street railway company for all damages occasioned by injury to its passengers for which it (street railway) was liable, from the 9th of December, 1892, until its policy was canceled. The policy was not canceled by the insurance company until the 23rd day of January, 1893. The liability sued on had supervened in the meantime. While the insurance company had the right to cancel the policy for the nonpayment of the premium, as per the contract between the parties, it had no power to make this cancellation relate back and avoid the policy *ab initio.*"

We find nothing in the case last cited that supports the contention of the appellants, and we think that the case of *Abrams* v. *Citizens B. & L. Assn.,* 125 Ark. 192, 188 S. W. 557, also cited and relied on by appellants, has no application to the facts in this case.

We agree with the appellants that they had a right to pay the amount due under the contract, and were entitled to credits for all they had paid, but the amount of the payments and when made were questions of fact, and we cannot say that the finding of the trial court was not supported by the evidence.

Appellants urge that the case be reversed because, as contended by them, it was error to confirm the sale while the suit to vacate the judgment was pending, and also because of the contract of September 14, 1939, and that the contract was tainted with usury.

The contract was for compensation for attorneys, and while it was not a proper charge against appellants, it did not make the original contract usurious. This court has frequently held that an agreement for an attorney's fee is void, but that such a provision in a contract does not make the contract usurious. This fee was not paid and the trial court held that it could not be collected.

Appellants urge that they were entitled to an accounting. There was no dispute about the original amount of indebtedness, and no dispute about the payments. The contract provided for monthly payments and it did not require any accounting to see how much was due.

Appellants complain about the advertisement of sale, and say that it was not published for a sufficient length of time. Section 8776 of Pope's Digest provides for the publication of notices in some newspaper having a *bona fide* circulation in the county. The statute, however, does not attempt to fix the length of time for which the notice should be published, and the time and place and notice of sale are within the discretion of the trial court. This action was begun in August, 1935, and it was continued, sometimes by agreement, and sometimes postponed because of the restraining orders sought and obtained by appellants.

It would extend this opinion unnecessarily to copy all of the evidence, including the documents introduced,

and it is unnecessary because the appellants do not argue anything except the points above set out.

We have carefully examined all of the evidence, and have reached the conclusion that the chancellor's finding of facts is not against the preponderance of the evidence. The decree is affirmed.